UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHANA SANDLER, )<br>)<br>       *Plaintiff* )<br>)<br>v. )<br>)<br>MIA CALCAGNI *et al.*, )<br>)<br>       *Defendants* ) | Case No. 1:07-cv-00029 |

### **MOTION FOR APPROVAL OF ATTACHMENT PURSUANT TO LOCAL RULE 64 AND M.R.CIV.P. 4A, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Shana Sandler moves this Court for an order of attachment against the real property of Defendants Ralph Calcagni and Maureen Calcagni in the amount of $250,000 pursuant to Local Rule 64 and M.R.Civ.P. 4A. Plaintiff has filed the affidavits of Shana Sandler and Bernard J. Kubetz, Esq. in support of this Motion.

### **FACTUAL BACKGROUND**

In 2006, Booksurge, LLC published, and Ralph Calcagni and Maureen Calcagni distributed, a book entitled *"Help Us Get Mia."* (Affidavit of Shana Sander ¶ 7). The book, authored by Defendants Ralph and Maureen Calcagni and Peter Mars, purports to depict and chronicle several events in the life of Shana Sandler, going back to her time as a student at Winthrop High School and her interactions with Mia Calcagni. (*Id.* at ¶¶ 2, 7, 8, 11(a) – 11(r)).

Prior to publication of the book, Shana Sandler had been the victim of hate crimes directed at her Jewish ancestry. (*Id.* at ¶¶ 3, 4, 6). On November 10, 2003, Mia Calcagni painted Swastikas on street signs in the vicinity of Ms. Sandler's home, which caused severe emotional distress to her. (*Id.* at ¶¶ 4-5). As a result of painting these Swastikas, Mia Calcagni was subsequently convicted of the crime of Class D criminal mischief and charged with violations of

the Maine Civil Rights Act by the Maine Attorney General. (*Id.* at ¶ 6). Mia's prosecution by the Maine Attorney General resulted in her entering into a Consent Agreement in August, 2005. (*Id.*).

The following year, in 2006, *"Help Us Get Mia"* was published. (*Id.* at ¶ 7). Publication of the book made local news in Winthrop, and a number of people from the Winthrop area contacted Shana to inform her of the book's publication and the events it purports to chronicle. (*Id.* at ¶¶ 9, 12). *"Help Us Get Mia"* contains a number of false and defamatory statements about Shana Sandler – including statements that she "harassed" Mia Calcagni – that have harmed her reputation in the community and caused great humiliation. (*Id.* at ¶¶ 10, 11(a) – 11(r), 15). The Defendants Ralph and Maureen Calcagni were negligent in publishing these false statements about Shana Sandler. (*Id.* at ¶ 12). As a result of these publications, Shana Sandler fears that people in the Winthrop community and wherever else she might go in her life will read the book and believe its statements, and its depictions of her, to be true. (*Id.* at ¶ 13). Some of these fears have already been confirmed, when working in a Winthrop jewelry store in December 2006, a number of people approached Shana to discuss the book and the events it purports to depict. (*Id.* at ¶ 14).

As a result of the false statements contained in *"Help Us Get Mia,"* Plaintiff has suffered damages, including harm to her reputation in the community, humiliation and severe emotional distress. (*Id.* at ¶¶ 14 – 15).

## **ARGUMENT**

**I.     PLAINTIFF IS ENTITLED TO AN ORDER OF ATTACHMENT**

Pursuant to Local Rule 64 and M.R.Civ.P. 4A(c), attachment may be ordered upon a finding by the Court that:

> [I]t is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

In order to meet her burden of proof on this attachment motion, Plaintiff must convince the Court, by a preponderance of the evidence, that she will recover an amount equal to or greater than $250,000 against Defendants Ralph and Maureen Calcagni, which is the amount she seeks to attach. *See Wilson v. DelPapa*, 634 A.2d 1252, 1255 (Me. 1993).

### A. It is More Likely than Not that Plaintiff Will Recover an Amount Equal to or Greater than $250,000

Plaintiff's First Amended Complaint seeks recovery for libel, libel per se and punitive damages against Defendants Ralph and Maureen Calcagni. A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him." *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996). To establish a libel claim, a plaintiff must prove (a) a false and defamatory statement concerning another; (b) an unprivileged publication of that statement to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Lester v. Powers,* 596 A.2d 65, 69 (Me. 1991); *Restatement (Second) of Torts § 558 (1977). See generally, Roche v. Egan*, 433 A.2d 757 (Me. 1981). Maine follows the *Restatement's* definition of "special harm" as the "loss of something having economic or pecuniary value." *Withers v. Hackett*, 1998 ME 164, ¶ 9, 714 A.2d 798, <u>citing</u> *Restatement (Second) of Torts § 558 (1977)*. A statement may be actionable without proof of special harm if it implies the existence of undisclosed defamatory facts. *Staples v. Bangor Hydro Electric Co.*, 629 A.2d 601, 603 (Me. 1993). Statements alleging harassment are defamatory.

3

A statement falsely spoken constitutes libel per se if it relates to a person's competence in a profession or if it falsely charges a punishable offense. *Saunders v. VanPelt*, 497 A.2d 1121 (Me. 1985); *Staples v. Bangor Hydro Electric Inc.*, 561 A.2d 499 (Me. 1989); *Gautschi v. Maisel*, 565 A.2d 1009 (Me. 1989); *Rippett v. Bemis*, 672 A.2d 82 (Me. 1996); and *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988). When applicable, the doctrine of defamation per se relieves the burden of proving actual or special damages as a prerequisite to recovery. *Levinsky's v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 135 (1st Cir. 1997).

To establish a claim for punitive damages, the plaintiff must demonstrate, by clear and convincing evidence, that there was express malice or that malice can be implied. *Tuttle v. Raymond*, 494 A.2d 1353, 1361-63 (Me. 1985). Malice can be implied where deliberate conduct by a defendant, although motivated by something other than ill will, is so outrageous that malice toward a person injured as a result of that conduct can be implied. *Id.*

Here, Defendants have authored a book containing no shortage of false statements about Plaintiff and then distributed this book. Defendants Ralph and Maureen Calcagni were at a minimum negligent in publishing these statements. The false statements at question in this litigation constitute both libel and libel per se. Plaintiff will be able to prevail on her libel claim without a showing of special harm because certain of the statements published by Defendants are actionable in implying the existence of undisclosed defamatory facts. *Staples v. Bangor Hydro Electric Co.,* 629 A.2d at 603. Defendants published statements that Plaintiff had undergone rhinoplasty, that she was in treatment for "professional help," and that she was caught masturbating in a school bathroom. Affidavit of Shana Sandler, ¶¶ 11(d), 11(h). These statements imply the existence of undisclosed defamatory facts. Plaintiff will prevail on her libel per se claim because Defendants have published statements that Plaintiff committed punishable

4

offenses. They have stated that Plaintiff engaged in acts that constitute both harassment and telephone harassment, *cf.* Affidavit of Shana Sandler, ¶¶ 11(f), 11(g), 11(l), 11(m), 11(p), 11(q), 11(r); 17-A M.R.S.A. §§ 506, 506-A, criminal mischief, *cf.* Affidavit of Shana Sandler, ¶ 11(l); 17-A M.R.S.A. § 806, and theft by unauthorized taking or transfer, *cf.* Affidavit of Shana Sandler, ¶ 11(k); 17-A M.R.S.A. § 353. Because these statements falsely charge punishable offenses, Plaintiff will not need to prove any special damages.

Plaintiff is likely to recover punitive damages. There is no clear explanation for why the Defendants would write and distribute *"Help Us Get Mia"* with the number of defamatory falsehoods it contains about Plaintiff unless they harbor some ill will toward her. Defendants' deliberate conduct was either motivated by ill will toward Plaintiff, perhaps because of the criminal prosecutions of their daughter for the hate crimes she perpetrated against Plaintiff or, in the alternative, their conduct is simply so outrageous that malice toward Plaintiff can be implied. In either event, sufficient facts exist upon which Plaintiff will be able to recover an award of punitive damages.

As a result of Defendants' actions in publishing these defamatory and false statements about Plaintiff, she has suffered damage. Therefore, this Court should conclude that Plaintiff is more likely than not to prevail on all of her claims against Defendants Ralph and Maureen Calcagni.

### B. The Amount of the Attachment is Reasonable

When dealing with "dignatory torts" such as those alleged in the Complaint, "evidence of plaintiff's mental suffering is sufficient to support a substantial compensatory award." *Vogt v. Churchill,* 679 A.2d at 524 (1996); *see also*, L.Tribe, *American Constitutional Law* 649 (1978) ("Defamation has long been regarded as a form of 'psychic mayhem,' not very different in kind,

and in some ways more wounding, than physical mutilation," *quoted in Roche v. Egan*, 433 A.2d at 765. In *Vogt*, the Law Court upheld the entry of an attachment order in the amount of $100,000 in a defamation case. 679 A.2d. at 523. That case involved actions that took place over ten (10) years ago. *Id.* This case involves the publication and dissemination of a book falsely depicting the Plaintiff as someone who harasses others and, among other allegations, was caught masturbating in a public area. Publication of these statements has caused Plaintiff severe emotional distress. The Defendants were so reckless in their writing and distribution of *"Help Us Get Mia"* that malice can be implied and Plaintiff will likely recover punitive damages. Attachment is also reasonable here where the Defendants have listed for sale their home in Winthrop, Maine. Under the circumstances, $250,000 is a reasonable attachment amount against these Defendants. Finally, counsel for Plaintiff is not aware of any insurance that is available to satisfy any judgment against the Defendants in this matter.

## **CONCLUSION**

The Court should enter an order for approval of attachment against the real property of Defendants Ralph and Maureen Calcagni in the amount of $250,000 because it is more likely than not that the Plaintiff will prevail on her claims against these Defendants in that amount or more.

Dated at Bangor, Maine, this 16th day of July, 2007.

                                          PLAINTIFF, Shana Sandler,

                                          BY   */s/ Bernard J. Kubetz*
                                                 Bernard J. Kubetz, Esq.
                                                 Michael R. Clisham, Esq.
                                                 Eaton Peabody
                                                 P. O. Box 1210
                                                 80 Exchange Street
                                                 Bangor, Maine 04402-1210
                                                 (207) 947-0111
                                                 bkubetz@eatonpeabody.com

## **CERTIFICATE OF SERVICE**

I, Bernard J. Kubetz, hereby certify that on July 16, 2007, I electronically filed the foregoing Motion for Approval of Attachment with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to the following:

Bruce Mallonee, Esq.
Rudman & Winchell, LLC
84 Harlow Street
P. O. Box 1401
Bangor, Maine 04402-1401

Steven P. Wright, Esq.
Matthew J. Segal, Esq.
Stephen A. Smith, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950

                                                */s/ Bernard J. Kubetz*
                                                Bernard J. Kubetz