UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHANA SANDLER,               ) | |
|                              ) | |
|     Plaintiff      ) | |
|                              ) | |
| v.                           ) | |
|                              ) | |
| MIA CALCAGNI,                ) | Case No. 07-CV-00029-GZS |
| RALPH CALCAGNI,              ) | |
| MAUREEN CALCAGNI,            ) | |
| PETER MARS, and              ) | |
| BOOKSURGE, LLC,              ) | |
|                              ) | |
|     Defendants     ) | |

<u>RESPONSE OF DEFENDANTS RALPH CALCAGNI AND MAUREEN
CALCAGNI TO PLAINTIFF'S AMENDED MOTION FOR APPROVAL OF
ATTACHMENT AND TRUSEE PROCESS</u>

### I.  INTRODUCTION

This case arises out of a series of actions by a number of young people in Winthrop, Maine.  Their conduct resulted in several persons, including Defendant Mia Calcagni, being charged with the juvenile offense of criminal mischief.  It also resulted in a civil rights action being brought by the state.

Mia Calcagni was found liable for the juvenile offense of criminal mischief.  The civil rights case against her was resolved with a consent decree that did not include factual admissions or findings.

Following resolution of the civil rights case, the book <u>"Help Us Get Mia . . ."</u> was published.  Plaintiff now seeks an order of attachment and trustee process for damages generated by statements within that book she claims are defamatory.  Plaintiff is not entitled to this preliminary relief.

## II. LEGAL STANDARD FOR ATTACHMENT AND TRUSTEE PROCESS

Plaintiff is entitled to an order of attachment and trustee process upon "a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment . . . in an amount equal to or greater than the amount of the attachment." <u>Svenska Ortmedicinska Institutet, AB v. DeSoto</u>, 164 F.Supp.2d 27, 33 (D. Me. 2001) (quoting M.R.Civ.P 4A). In <u>Svenska</u>, this court quoted two apparently inconsistent standards both found in opinions of the Maine Supreme Judicial Court, by which reasonable likelihood might be found.

<u>Svenska</u> first noted that "to be entitled to attachment and trustee process, '[a] moving party must show a greater than 50 percent chance of prevailing.'" <u>Svenska Ortmedicinska Institutet, AB v. DeSoto</u>, <u>Supra</u>, 164 F. Supp.2d 27at 33, *quoting* <u>Liberty v. Liberty</u>, 2001 Me 19, 12, fn 4, 769 A.2d 845, 847). The <u>Svenska Ortmedicinska Institutet, AB</u> decision then cited <u>Bates Fabrics, Inc v. LeVeen</u>, a previous decision by the Law Court:

> The Law Court has previously stated that the rules governing prejudgment attachment are 'quite liberal' and that the 'reasonable likelihood standards of Rule 4A and 4B do not require the trial court to decide whether 'it is more likely than that [a party] will prevail' but only 'whether the underlying claim is substantial enough that there appears to be a reasonable possibility of recovery . . .'" [citations omitted]. Attachment does require specific facts to support a claim for recovery 'evidence 'from which some informed projection [can] be made' as to the amount of damages suffered by the party.'

164 F.Supp.2d 27 at 33, quoting <u>Bates Fabrics, Inc. v. LeVeen</u>, 590 A.2d 528, 531 (Me. 1991) (internal citations omitted).

This court need not resolve whether the Law Court requires a showing of greater than 50 percent chance of prevailing or instead showing a reasonable probability of recovery. Plaintiff's request does not fulfill either standard with respect to either liability or damages.

## III. ALLEGED DEFAMATION

### A. Plaintiff's motion does not establish responsibility by either Maureen or Ralph Calcagni for specific statements in the book.

The statements Plaintiff claims are defamatory are listed in paragraph 11 of her affidavit. She does not attribute any of these statements specifically to Ralph or Maureen Calcagni. As Maureen Calcagni confirms in her affidavit, "Help Us Get Mia . . ." was written by Defendant Peter Mars. Although the Calcagnis provided information to Mr. Mars, Mr. Mars wrote most of the narrative in the book and was responsible for verifying allegations the Calcagnis presented.

### B. Statements taken out of context cannot reasonably support a request for attachment.

Whether a statement is defamatory is determined not only by the words within it but by the totality of circumstances surrounding the communication. Haworth v. Feigon, 623 A.2d 150, 156-57 (Me. 1993). Instead of submitting the book, Plaintiff has submitted a list of quotations pulled out of context. Without the book, this court cannot examine the context in which the statements appeared. Without knowing the totality of circumstances, this court cannot reasonably conclude that any given statement was defamatory.

### C. Plaintiff's submission does not establish any degree of culpable fault.

According to the Restatement (Second) of Torts, liability for defamation is based on the following:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1997). *see also* Veilleux v. National Broadcasting Co., Inc., 8 F.Supp.2d 23 (D. Me. 1998).

All of the statements of which Plaintiff complains appear in a book. She does not attribute them personally to either Calcagni defendant. Neither does she show that the statements, if defamatory, were included in the book as a result of fault on the part of either Calcagni. Without knowing the sources of Defendant Mars's information, or the forms in which that information was presented to him, neither negligence nor any greater degree of fault can be attributed to the Calcagni defendants.

### D. Each specific statement alleged to be defamatory in Plaintiff's affidavit is inadequate to sustain a claim.

- Affidavit Paragraph 11 (a): "*Shana had many problems at Maranacook [High School].*" Exhibit C, Plaintiff's deposition at pp. 8 through 23, establishes this statement is true and therefore not actionable. Restatement (Second) of Torts § 581A (1977). Even if the statement were false, it would not tend to harm Plaintiff's reputation in the community or cause others not to have dealings with her Neither would it nor naturally tend to expose her to public hatred, contempt, or ridicule, or to deprive her of the benefit of public confidence and social intercourse. Norris v. Bangor Publishing Co., 53 F.Supp.2d 495 (D. Me. 1999); *see also* Cohen v. Bowdoin, 288 A.2d 106, 111 (Me. 1972).

- Affidavit Paragraph 11(b): "*Shana was also in cheering but was being made fun of by some of the students there and, consequently, had been running alone. She, obviously, had no friends in the new school.*"

Exhibit F, the birthday card Plaintiff sent to Defendant Mia Calcagni, suggests this statement is true. Even if false, it does not meet the legal standard for defamation.

Restatement (Second) of Torts §581A (1977); Norris, supra, F.Supp.2d at 495; Cohen, supra, 288 A.2d at 111.

- Affidavit Paragraph 11(c): "*Shana was one of those loud, in-your-face people whose personality grated on everyone around her. And, she was not very good in cheering because she did not have any cheering background.*"

These are statements of opinion and therefore not actionable. Restatement (Second) of Torts § 566 (1977); Ballard v. Wagner, 2005 ME 86, pp 12 – 15, 877 A.2d 1083, 1088.

- Affidavit Paragraph 11(d): "*The next day, Shana started calling Mia's house over and over on the phone without stopping.*"

This statement, even if false, is not legally defamatory. An allegation of irritating behavior, even if baseless, will not subject a person to public hatred, contempt or ridicule. Further, it appears this statement is true. See Exhibit C, Plaintiff's Deposition at p. 34, and Defendant Maureen Calcagni's Affidavit at para. 6.

- Affidavit Paragraph 11(e): "*Shana had issues and needed to seek professional help, as she did while she was a student at Maranacook [High School], and as she would again do in the spring of 2005 while attending college in North Carolina.*"

Plaintiff's need for professional help is established by Exhibit C, her deposition at pp. 8 - 20, and by Exhibit G, her myspace.com posting of April 11, 2005. Further, even if false, this statement would not meet legal standards for defamation.

- Affidavit Paragraph 11(f): "*Shana had learned well from her litigious father that it was always someone else's fault, and through lies, yelling, intimidation, and the threat of lawsuit, one could usually get their [sic] own way.*"

Although phrased as a statement of fact this is an expression of opinion, primarily an opinion of Plaintiff's father. See also Exhibit G, Plaintiff's myspace.com posting of April 11, 2005.

- Affidavit Paragraph 11(g): "*Shana was quickly at the computer spreading her lies and she continued her performance in the following days at Winthrop High School. Shana started telling people in school that Mia was pregnant. She then taped subscription applications for Parents Magazine to Mia's locker. And when she saw Mia in the hallways at school, she would shout out, for everyone to hear, invitations to Mia's baby shower.*" These statements appear to be true based on Exhibit C, Plaintiff's Deposition pp. 25 - 29, and Exhibit E, Director Hibino's letter of October 15, 2004.

- Affidavit Paragraph 11(h): "*Shana further persisted in formulating new, more devastating rumors by stating to those who were familiar with Mia that Mia was expelled from school, was out of school so that she could have an abortion, and that Mia painted swastikas on the street signs on Route 41.*"

Plaintiff's issuance of false statements concerning Defendant Mia Calcagni, and her enjoyment of the consequences, may be found on pp. 40 - 44 of her deposition, Exhibit C; her undated instant message exchange, Exhibit K; the transcript of the juvenile trial at pp. 84 - 89, Exhibit D; email exchange of November 16, 2003, Exhibit L; and online profile of December 7, 2003, Exhibit N.

- Affidavit Paragraph 11(i): "*One of the girls in the room was asking why Shana moved from Maranacook High School to Winthrop . . . At that time, another girl piped up and asked, 'Wasn't it because Shana was playing with herself in the bathroom while a school bus waited for her?*'"

- Affidavit Paragraph 11(j): "*Mia said, 'She was caught fingering herself.' (or something very close to that).*"

"Help Us Get Mia . . ." records the history of a series of events, investigation by the authorities, and resulting legal proceedings. The statements above appear in Exhibit G, a series of notes recorded by music teacher Michael Shaw of Winthrop High School.

Within the book, the factual significance of the statements is that they were made, not that they were true. Plaintiff appears not to dispute that the statements were recorded accurately in the book.

- Affidavit Paragraph 11(k): "*Mia . . . also said that Shana was a whore.*"

As with statements (i) and (j) above, the factual significance of this statement within the book is that it was made, not that it was true or even implied to be true. The statement appears in the book in a written statement made to the Winthrop police by one Samantha Pietraszewski (Exhibit Q). Ms. Pietraszewski's statement was privileged when made because it was offered in communications preliminary to a proposed judicial proceeding. Restatement (Second) Torts § 588 (1997). Its republication in the book as a recounting of the events in question was true — the statement was in fact made — and not defamatory.

- Affidavit Paragraph 11(l): "*To begin, it is important to note that Shana, in her on-line autobiography, states in answer to the question, 'Have you ever shoplifted?' that she would not comment on that question. Immediately, that sends up a red flag indicating that if she had never shoplifted, she could easily have answered, 'No.' However, this type of answer implies that she has committed this offense.*"

Exhibit H, Plaintiff's myspace.com profile, establishes that the factual component of this statement is accurate. The opinion derived from the fact is based entirely on the statement, not on other, implied sources, and is therefore not defamatory. See Restatement (Second) Torts § 566 (1977); Ballard, supra, 2005 ME at pp 12 – 15, 877 A.2d at 1088.

- Affidavit Paragraph 11(m): "*Over time, Allison [Upton] got into trouble at the high school for lies perpetrated by Shana. As a further slap to Allison, Shana was seen in the*

*art room destroying her own art work and then stating that Allison had done the damage.*"

The source of this information was Karen Cox, mother of the student in question. (Maureen Calcagni Affidavit para. 7). Maureen Calcagni's reasonable reliance on Ms. Cox in submitting this information to Defendant Mars was not actionable, even if the information should eventually prove to be false. See Restatement (Second) Torts § 558(c) (1977).

- Affidavit Paragraph 11(n): "*Add this to the fact that Shana Sandler admitted to police of her harassment toward Mia in the issue of the supposed pregnancy.*"

This statement appears to be true, based on Exhibit C, Plaintiff's Deposition at pp. 26 - 29, and Exhibit E, report from Mr. Hibino. Although these sources do not confirm with certainty that Plaintiff's admissions were made to the police, the admissions obviously were made to persons in authority.

- Affidavit Paragraph 11(o): "*Shana Sandler was ceremoniously ushered into court by a victim's advocate. In a rare display of honesty, she admits in court on 4/29/04 that <u>she did start rumors</u> about Mia being pregnant and painting the signs, contrary to all her previous statements and complaints.*"

Plaintiff's admissions are confirmed in Exhibit C, her deposition at pp. 26 - 29 and 47 - 48, as well as in Exhibit D, the transcript of court proceedings at pp. 84 – 89. To the extent this statement exceeds the scope of Plaintiff's admissions, it is in the nature of an opinion and therefore not actionable. See Restatement (Second) of Torts § 566; Ballard, supra, 2005 ME at pp 12 – 15, 877 A.2d at 1088.

- Affidavit Paragraph 11(p): "*The girl, Shana Sandler, as admitted by her own email instant messages, which give insight into her personality, is selfish and can only see her own needs and desires, and because of this, strikes out against the only true friend she*

*has ever had. Shana, being ruthless and cunning, as can easily be assumed through her admissions and actions, manufactured a number of ways to destroy Mia."*

Without the email messages to which this statement refers, it is difficult to establish the statement's context. Plaintiff's email conversations (Exhibits K, L, and M) and her birthday card to Defendant Mia Calcagni, Exhibit F, establish the truth that Plaintiff's friendship with Mia had turned sour. The statement itself is an opinion the defamatory nature of which cannot be assessed out of context. Haworth v. Feigon, 623 A.2d 150 (Me. 1993), See Restatement (Second) of Torts § 566.

- Affidavit Paragraph 11(q): *"Since Mia's removal from school by us [Ralph & Maureen Calcagni] she has heard many comments in passing on the internet, in person, and by phone reporting that Shana continues her badgering of Mia telling people she is expelled, that she has painted the signs and that she is out either due to a miscarriage or an abortion."*

The likely truth of these statements is confirmed by the sources cited with respect to paragraph 11(n) above. Further, this statement appears in the book in a reproduction of a letter from Defendants Ralph and Maureen Calcagni to Officer Chris Carson of the Winthrop Police Department, dated November 25, 2003 (Exhibit P). In context, the letter can be seen as recounting communications that took place during the investigation. The letter appears in the book as part of the investigation. It truthfully represents one of the communications involved. See Restatement (Second) of Torts § 587.

- Affidavit Paragraph 11(r): *"Mia received a harassing phone call on the evening of February 4 from someone who did not identify herself but whose voice resembled that of Shana Sandler. An audiotape of this brief phone call is available."*

This statement appears in the book as part of a letter from attorney Peter B. Bickerman to Assistant District Attorney Patricia Kelley, dated February 5, 2004, and reproduced in

{R0387621.1 49252-053567} 9

full, including letterhead as Exhibit O. Mr. Bickerman's communication was absolutely privileged. See Restatement (Second) of Torts § 586 (1977). The reproduction of Attorney Bickerman's letter, as part of the story of the investigation and prosecution, is not defamatory.

### E. Plaintiff's submission provides no basis on which the court could conclude that her damages, if she proves her case, will exceed $250,000.00.

There is no allegation in Plaintiff's affidavit that she sought professional treatment specifically related to the publication of "Help Us Get Mia . . ." Neither is there any other claimed expenditure, financial loss, or objective indicium of emotional distress by which the court could without gross speculation assign a value to Plaintiff's claim. If Plaintiff prevails on her defamation claim, she may recover $250,000.00. She may recover $250.00. The jury's response to Plaintiff's claim cannot with any certainty be predicted. Svenska Ortmedicinska Institutet, AB v. DeSoto, 164 F.Supp.2d 27, 33 (D. Me. 2001).

### IV. CONCLUSION

Plaintiff's submission in support of her amended motion for attachment and trustee process establishes no basis upon which the court could reasonably conclude she will prevail in her action on any theory. Neither does it establish she has suffered damages to any articulable degree. For these reasons, her motion must fail.

Dated: August 15, 2007                /s/ Bruce C. Mallonee
                                      Bruce C. Mallonee, Esq.
                                      RUDMAN & WINCHELL
                                      Attorney for Mia Calcagni, Ralph Calcagni,
                                      and Maureen Calcagni
                                      84 Harlow Street, P.O. Box 1401
                                      Bangor, Maine  04402-1401
                                      Telephone: (207) 947-4501
                                      bmallonee@rudman-winchell.com

# CERTIFICATE OF SERVICE

I, Bruce C. Mallonee, hereby certify that on August 1, 2007, I filed the foregoing Response of Defendants Ralph Calcagni and Maureen Calcagni to Plaintiff's Amended Motion for Approval of Attachment and Trustee Process with the Clerk of the United States District Court using the CM/ECF system , which will send notification electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Bruce C. Mallonee*
Bruce C. Mallonee, Esq.
RUDMAN & WINCHELL
Attorney for Mia Calcagni, Ralph Calcagni, and Maureen Calcagni
84 Harlow Street, P.O. Box 1401
Bangor, Maine  04402-1401
Telephone: (207) 947-4501
bmallonee@rudman-winchell.com