UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHANA SANDLER,                )  |  |
|                                               )  |  |
|           Plaintiff                      )  |  |
|                                               )  |  |
|     v.                                     )  |  |
|                                               )  | Case No. 07-CV-00029-GZS |
| MIA CALCAGNI,                   )  |  |
| RALPH CALCAGNI,              )  |  |
| MAUREEN CALCAGNI,        )  |  |
| PETER MARS, and              )  |  |
| BOOKSURGE, LLC,              )  |  |
|                                               )  |  |
|           Defendants              )  |  |

### AFFIDAVIT OF MAUREEN CALCAGNI, PRESENTED IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR APPROVAL OF ATTACHMENT AND TRUSTEE PROCESS

1.   My name is Maureen T. Calcagni. I am one of the parties defendant in this action.

2.   This affidavit is offered in opposition to Plaintiff's Amended Motion for Approval of Attachment and Trustee Process.

3.   Hard copies of the following documents are being filed with the court. Each is a true copy:

   Exhibit A. Decision in State of Maine v. Mia Calcagni, Docket No. AUG-JV-04-006, dated September 9, 2004 (4 pages)

   Exhibit B. Consent Decree and Permanent Injunction issued in the civil action State of Maine v. Mia Calcagni, et al., Docket No. CV-04-076, dated August 12, 2005 (4 pages)

   Exhibit C. Deposition of Plaintiff, taken on March 11, 2005 in Docket No. CV-04-076 (20 pages)

   Exhibit D. Partial trial transcript of testimony by Plaintiff in State of Maine v. Mia Calcagni, Docket No. AUG-JV-04-006 (6 pages)

   Exhibit E. Letter from Thomas J. Hibino, Director, United States Department of Education Office for Civil Rights, dated October 15, 2004 (9 pages) (the student referred to on page 2 as "Student B" is Plaintiff)

Exhibit F. Birthday Card from Plaintiff to Mia Calcagni with envelope.

Exhibit G. Document prepared by music teacher Michael Shaw of Winthrop High School recording events that occurred in his classroom on October 24, 2003, dated November 10, 2003

Exhibit H. Plaintiff's myspace.com profile, dated March 16, 2005 (4 pages)

Exhibit I. Myspace entry for April 11, 2005 (Page 1 of 2)

Exhibit J. Myspace entry for May 5, 2005 (Page 1 of 1)

Exhibit K. Undated online communication between Plaintiff (SummerEyes9) and another person (AirFxSTR03) (1 page)

Exhibit L. November 16, 2003 online conversation between Justin Childs (xow4e2eOdox) and Mia Calcagni (PrTyLiLisHoRtY) (1 Page)

Exhibit M. November 25, 2003 online communication between Plaintiff (DivinitySweets) and another person (sNOboardr888) (1 page) (the shorthand terms "sas" and "swas" refer to swastikas)

Exhibit N. Internet posting by Plaintiff 12/7/03 referring to trial in Defendant Mia Calcagni's juvenile case (1 page)

Exhibit O. Letter from Attorney Peter B. Bickerman to Assistant District Attorney Patricia Kelley, dated February 5, 2004.

Exhibit P. Letter from Defendants Ralph and Maureen Calcagni to Officer Chris Carson of the Winthrop Police Department, dated November 25, 2003

Exhibit Q. Statement to police from Samantha Pietraszewski, dated November 20, 2004.

4. Defendant Peter Mars wrote "<u>Help Us Get Mia . . .</u>". Defendant Ralph Calcagni submitted written passages that were incorporated in the book, but Mr. Mars wrote most of the narrative and was responsible for editing and final content. Mr. Calcagni and I submitted certain factual material to Mr. Mars for his verification. Mr. Mars engaged an assistant to help him in his factual investigation.

5. In paragraph 11 of her Affidavit of July 5, 2007, Plaintiff identifies as defamatory eighteen statements from "<u>Help Us Get Mia . . .</u>". The statements were taken out of context. Compare, for example, the statements in paragraphs 11 a., b., and c.,

presented out of context, with their appearance in a passage extending from pages 7 to 8 of the book (the statements of which Plaintiff complains appear in boldface):

> In her sophomore hear of high school, Mia met Shana Sandler. Shana was in her junior year and had recently transferred from Winthrop under a superintendent's agreement from Maranacook High School. **Shana had many problems at Maranacook** and apparently felt a different school was in order. Shana was relieved that her parents wouldn't have to pay tuition to Winthrop, even though they lived in Readfield, because of the agreement between the schools' superintendents. **Shana was also in cheering but she was being made fun of by some of the students there and, consequently, had been running alone. She, obviously, had no friends in the new school.** At some point subsequent to that first meeting, Mia saw Shana crying at a cheering practice and went over to talk with her to ask her what the problem was. Shana opened up and said that ever since she had been a freshman and had a nose job kids had made fun of her and avoided her. That was one of the reasons she had come to Winthrop and she was hoping things would be better for her here. No one likes to become the ally of a laughingstock. She thought that by going out for cheering, she would overcome per poor self-esteem but that did not happen. **Shana was one of those loud, in-your-face people whose personality grated on everyone around her. And, she was not very good in cheering because she did not have any cheering background.** It was not something one could jump into without having a great deal of practice.
>
> Mia felt sorry for Shana and wanted to be a mentor to her. She offered to help her with her cheering and with anything else that would bring her out of the terrible state in which she found herself. One day, Shana asked if she could come to Mia's house over the weekend or if Mia could come to her house and be friends with her. Mia immediately answered in the affirmative. Mia said, "Of course." She really felt badly for Shana and would do anything to help. Mia's heart often spoke even before her mind. Shana so appreciated Mia's friendship that she gave Mia a card on her sixteenth birthday that said:
>
> *Dear Mia,*
>
> *Wow, life sure got better once you came around. First was cheerleading OMG crazyness. You were always perky and fully of interesting info. I LOVE having you as a base buddy. I knew I could count on you to help me when I messed up. You pushed me to go further then I ever would have gone w/stunting (a.k.a. a twist down.) Thank you so much.*
>
> *Then after cheering we started to hang out in and out of school. Going to Club Liquid!! if it wasn't for you I would be sitting on my ass doing nothing. Even though we had some rocky times I want you to know I will always be there for you no matter what. Words or presents could not describe how much you man to me. You are one in a million and I feel fortunate to know you. Thank you for being light in my world. Happy Sweet 16 Birthday Mia. May all your dreams come true. Love ya – Shay!*

6. Paragraph 11 d. of Plaintiff's Affidavit identifies as defamatory a statement that "the next day, Shana started calling Mia's house over and over on the phone without stopping." I was present on the day this occurred and answered two or three of a series of telephone calls. Plaintiff identified herself as the person on the other end of the line.

7. Paragraph 11 m. of Plaintiff's Affidavit identifies as defamatory certain statements about Plaintiff and another student. The information in those statements was provided to me by Karen Cox, mother of the other student. I know Ms. Cox to be a reliable person.

Dated: 8|15, 2007

Maureen T. Calcagni

STATE OF MAINE
~~PENOBSCOT~~, ss.
Kennebec, ss.                                                8/15/07, 2007

Personally appeared the above-named Maureen T. Calcagni, and made oath that the statements made in the foregoing affidavit are true and accurate to the best of her personal knowledge or information and belief and to the extent that it is based on information and belief, the Affiant believes it to be true.

Before me,

Notary Public/~~Attorney at Law~~

**ELISA L. LAFLAMME**
**STATE OF MAINE**
**MY COMMISSION EXPIRES 2/14/2009**

{R0387502.1 49252-053567}                               4