UNITED STATES DISTRICT COURT
DISTRICT OF MAINE AT BANGOR

| | | |
|---|---|---|
| SHANA SANDLER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00029-GZS |
| | ) | |
| MIA CALCAGNI, | ) | |
| RALPH CALCAGNI, | ) | |
| MAUREEN CALCAGNI, | ) | |
| PETER MARS, | ) | |
| and | ) | |
| BOOKSURGE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**BOOKSURGE, LLC'S LOCAL RULE 56(c)
OPPOSING STATEMENT OF MATERIAL FACTS AND
ADDITIONAL STATEMENT OF MATERIAL FACTS**

BookSurge, LLC ("BookSurge"), pursuant to LR 56(c), does hereby set forth its Opposing Statement of Material Facts and Additional Statement of Material Facts:

**Opposing Statement of Material Facts ("BOSMF"):**

1. ADMITTED.

2. ADMITTED.

3. DENIED. BookSurge is a Print on Demand (P.O.D.) company that prints manuscripts in book or electronic format for self-publishing authors that submit their manuscripts to BookSurge through an on-line upload. Declaration of David Symonds in Support of Motion for Summary Judgment by BookSurge, LLC ("Symonds BookSurge SJ Decl.") (filed on March 17, 2008), ¶ 6; Declaration of Matthew J. Segal in Support of BookSurge, LLC's Memorandum Opposing

1

Plaintiff's Motion for Partial Summary Judgment ("Segal Opp. Decl."), Ex. A (Nov. 2007 Deposition of Ralph Calcagni ("R. Calcagni Dep. I") at 117:25 – 118:1-15). BookSurge lists for sale on its website the manuscripts submitted to it by self-publishing authors. Segal Opp. Decl., Ex. B (Feb. 2008 Deposition of David I. Symonds ("Symonds Dep.") at 51:11-16); R. Calcagni Dep. I at 53:1-14. BookSurge lists its customers' titles through an on-line electronic feed to Amazon.com, distributor Baker & Taylor and retailers Abebooks.com and Alibris.com. Symonds Dep. at 28:10-15, 30:24-25 – 32:1-2, 51:11-16; Symonds BookSurge SJ Decl., ¶ 6; R. Calcagni Dep. I at 53:1-14. BookSurge admits that it is located in Charleston, South Carolina.

4. QUALIFIED. *Help Us Get Mia* references Shana Sandler in limited instances in the process of chronicling and critiquing civil and criminal prosecutions against Ralph and Maureen Calcagni's daughter Mia. *See* R. Calcagni Dep. I at 9:9-25 – 10:1-18, 10:14-25 – 11:1-16; Segal Opp. Decl., Ex. C (Nov. 2007 Deposition of Maureen Calcagni ("M. Calcagni Dep. I") at 41:9-25 – 42:1-9, 113:14-18); *see also* Declaration of Matthew J. Segal in Support of BookSurge, LLC's Motions for Summary Judgment ("Segal BookSurge SJ Decl.") (filed on March 17, 2008), Ex. E (Nov. 2007 Deposition of Shana Sandler, Ex. 4 (complete copy of *Help Us Get Mia*)).

5. DENIED: Plaintiff's Statement of Material Facts does not contain any facts that support its assertion that *Help Us Get Mia* contains false and defamatory statements about Ms. Sandler, which, at any rate, is not a factual assertion. BookSurge, LLC's Motion for Summary Judgment on All Claims of Plaintiff

Shana Sandler and Incorporated Memorandum of Law, filed March 17, demonstrates that none of the statements in *Help Us Get Mia* involving Ms. Sandler are false and defamatory.

6. QUALIFIED: BookSurge admits that *Help Us Get Mia* identifies Emet Gabar as its author. Ralph Calcagni contacted BookSurge and requested that BookSurge print his PDF version of *Help Us Get Mia* as a book. Symonds BookSurge SJ Decl., ¶ 6. BookSurge printed 840 copies of *Help Us Get Mia* based on orders for 760 books from Ralph Calcagni and 80 individual orders. Symonds BookSurge SJ Decl., ¶ 10 & Ex. B; R. Calcagni Dep. I at 48:18-22. There is no executed copy of the terms and conditions identified by Plaintiff (Affidavit of Bernard J. Kubetz in Support of Plaintiff's Motion for Partial Summary Judgment ("Kubetz Aff."), Ex. 3); Declaration of David Symonds in Support of BookSurge, LLC's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment ("Symonds Opp. Decl."), ¶ 7; Segal Opp. Decl., ¶ 3. Neither BookSurge nor Ralph Calcagni has a copy of this agreement signed by Ralph Calcagni. Symonds Opp. Decl., ¶ 7; Segal Opp. Decl., ¶ 3. As a result, there is no signed agreement that governs the relationship between BookSurge and Ralph Calcagni.

7. QUALIFIED: The "Author Publishing Agreement" grants BookSurge a non-exclusive license to "publish" the manuscripts uploaded by its customers. Kubetz Aff., Ex. 3 at BS000002. There is no evidence that Ralph Calcagni signed these terms and conditions, nor do they reference *Help Us Get Mia*. BOSMF ¶ 6.

8. QUALIFIED: The "Author Publishing Agreement" provides BookSurge the right "not to accept a submission upon receipt." Kubetz Aff., Ex. 3 at BS000003.

There is no evidence that Ralph Calcagni signed these terms and conditions, nor do they reference *Help Us Get Mia*. BOSMF ¶ 6.

9. QUALIFIED: The "Author Publishing Agreement" states that BookSurge "intends to market the WORK on its web site, and make the WORK available for print-on-demand distribution in its various channels after receipt of all required materials relating to the WORK." Kubetz Aff., Ex. 3 at BS000003. There is no evidence that Ralph Calcagni signed these terms and conditions, nor do they reference *Help Us Get Mia*. BOSMF ¶ 6.

10. QUALIFIED: The copyright page of the book *Help Us Get Mia* states that the book was "Published by BookSurge, LLC" in 2006 (Kubetz Aff, Ex. 7 at BS000046); however, BookSurge did not draft the copyright page for *Help Us Get Mia* and the model copyright pages posted at that time did not state that BookSurge <u>publishes</u> any of the books it prints or distributes. Symonds BookSurge SJ Decl., ¶ 7 & Ex. A; Symonds Opp. Decl., ¶¶ 4-5 & Ex. A.

11. QUALIFIED: *Help Us Get Mia* was available for purchase through Amazon.com. Symonds BookSurge SJ Decl., Ex. B; Symonds Dep. at 51:11-16; R. Calcagni Dep. I at 53:1-14. BookSurge also lists its customers' titles through an on-line electronic feed with distributor Baker & Taylor and retailers Abebooks.com and Alibris.com (Symonds Dep. at 28:10-15), however, there is no evidence that *Help Us Get Mia* was listed through these three companies. Symonds Dep. at 30:24-25 – 32:1-2; Symonds BookSurge SJ Decl., Ex. B.

12. QUALIFIED: ████████████████████████████████

[REDACTED]

13. DENIED: BookSurge does not "actively" solicit new titles through its sales department and personnel. When a potential BookSurge customer contacts BookSurge through an email or phone call regarding its printing services, a BookSurge employee will respond to the inquiry and attempt to sell BookSurge's printing and other services. Symonds Dep. at 34:21-25 – 35:1-21; R. Calcagni Dep. I at 44:10-25 – 45:1-2, 102:20-25 – 103:1-9, 117:3-20; Declaration of Roy Francia in Support of BookSurge, LLC's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment ("Francia Decl."), ¶¶ 2-5.

14. QUALIFIED: [REDACTED]

15. QUALIFIED. BookSurge prints books but does not review the submissions for substance or content. Symonds Dep. at 37:15-25 – 38:1-22, 39:22-25 – 40:1-13, 53:15-25 – 54:1-2, 55:18-25 – 56:1-8; Symonds BookSurge SJ Decl., ¶ 4.

16. QUALIFIED. BookSurge does not review material it prints for substance or content, including *Help Us Get Mia*. Symonds Dep. at 37:15-25 – 38:1-22, 39:22-25 – 40:1-13, 53:15-25 – 54:1-2, 55:18-25 – 56:1-8; Symonds BookSurge SJ Decl., ¶¶ 4, 8; Francia Decl., ¶ 8.

17. QUALIFIED. BookSurge does not review material it prints for substance or content, including *Help Us Get Mia*. Symonds Dep. at 37:15-25 – 38:1-22,

39:22-25 – 40:1-13, 53:15-25 – 54:1-2, 55:18-25 – 56:1-8; Symonds BookSurge SJ Decl., ¶¶ 4, 8; Francia Decl., ¶ 8.

18. QUALIFIED. BookSurge does not review material it prints for substance or content. It may modify an electronic submission to meet requirements of its P.O.D. technology. Symonds Dep. at 37:15-25 – 38:1-22, 39:22-25 – 40:1-13, 53:15-25 – 54:1-2, 55:18-25 – 56:1-8; Symonds BookSurge SJ Decl., ¶ 4.

19. QUALIFIED. Ralph Calcagni contacted BookSurge on a web-landing page. Francia Decl., ¶ 4. BookSurge employee Roy Francia responded to Mr. Calcagni's inquiry. Francia Decl., ¶ 5; R. Calcagni Dep. I at 44:10-25 – 45:1-2, 102:20-25 – 103:1-9. Roy Francia answered questions for Ralph Calcagni about printing services for *Help Us Get Mia*, and Ralph Calcagni purchased an Author's Express PDF package from BookSurge. Francia Decl., ¶¶ 5-6. Roy Francia never saw, knew of, or read the contents of *Help Us Get Mia*. Francia Decl., ¶ 8; Symonds BookSurge SJ Decl., ¶¶ 4-5, 8. Roy Francia never discussed the contents of *Help Us Get Mia* with Ralph Calcagni. Francia Decl., ¶ 9; Symonds BookSurge SJ Decl., ¶¶ 4-5, 8.

**Additional Statement of Material Facts ("BASMF"):**

**BookSurge Background:**

1. Defendant BookSurge, LLC ("BookSurge") is a print-on-demand ("P.O.D.") company located in South Carolina. Symonds BookSurge SJ Decl., ¶¶ 2-3; Symonds Dep. at 12:22-25 – 13:1-4.

2. BookSurge is a trade name for On Demand Publishing, LLC. Symonds BookSurge SJ Decl., ¶¶ 2-3; Symonds Dep. at 12:22-25 – 13:1-4.

3. BookSurge is paid by self-publishing authors to print and bind PDF-formatted manuscripts using P.O.D. technology. Symonds BookSurge SJ Decl., ¶¶ 3, 6; R. Calcagni Dep. I at 43.

4. P.O.D. generally refers to digital methods that allow printing and binding of a complete book in a very short period of time. Symonds BookSurge SJ Decl., ¶ 3.

5. P.O.D. technology also facilitates production of books in very small lots, rather than hundreds or thousands at once—as few as one book at a time. Symonds BookSurge SJ Decl., ¶ 3; Symonds Dep. at 10:22-25 – 11:1-3.

*Help Us Get Mia* **Background:**

6. Defendants Ralph and Maureen Calcagni hired a local author, defendant Peter Mars, in April 2005 to help them write *Help Us Get Mia*, a book that chronicled and critiqued civil and criminal prosecutions against Ralph and Maureen's daughter Mia. *See* R. Calcagni Dep. I at 9:9-25 – 10:1-18, 10:14-25 – 11:1-16; M. Calcagni Dep. I at 17:7-12, 41:9-25 – 42:1-9, 113:14-18.

7. The Calcagnis decided to self-publish the book. R. Calcagni Dep. I at 41:18-25 – 42:1-25, 43:3-25 – 44:1-9.

8. Ralph Calcagni identified BookSurge through internet searches and determined that BookSurge was the best P.O.D. service available for his goals. R. Calcagni Dep. I at 42:14-25 – 44:1-9, 44:10-25 – 45:1-2, 101:22-25 – 102:1-2.

9. Ralph Calcagni's transaction with BookSurge is illustrative of a typical BookSurge customer experience. Symonds BookSurge SJ Decl., ¶ 6.

**BookSurge Does Not "Solicit" Publications:**

10. BookSurge does not actively solicit manuscripts. Symonds Dep. at 34:21-25 – 35:1-21.

11. Potential BookSurge customers contact BookSurge by email or through a web-landing page, and BookSurge salespeople follow up with phone calls or emails regarding BookSurge's printing process and services. Symonds Dep. at 34:21-25 – 35:1-21; R. Calcagni Dep. I at 44:10-25 – 45:1-2, 102:20-25 – 103:1-9, 117:3-20; Francia Decl., ¶¶ 2-5.

12. Ralph Calcagni contacted BookSurge through a web landing page, and BookSurge responded to Ralph Calcagni's inquiry by emails and follow-up phone calls. R. Calcagni Dep. I at 44:10-25 – 45:1-2, 102:20-25 – 103:1-9, 117:3-20; Symonds Dep. at 20:17-23, 34:21-25 – 35:1-21; Francia Decl., ¶¶ 4-5.

**BookSurge Customers Pay BookSurge to Print Their Manucripts:**

13. BookSurge's "authors" and customers <u>pay</u> BookSurge to print their books, as opposed to traditional publishers that pay authors for the right to publish their manuscripts. R. Calcagni Dep. I at 42:14-25, 43:3-25 – 44:1-9; Declaration of Steve Weinberg in Support of BookSurge, LLC's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment ("<u>Weinberg Decl.</u>"), ¶ 12; Symonds BookSurge SJ Decl., ¶¶ 3, 6-7.

14. BookSurge's posted terms and conditions provide only a non-exclusive license to its customers' books. Kubetz Aff., Ex. 3 at BS000002.

15. Many BookSurge customers use BookSurge's printing services to create a product that they can send to traditional publishers for future publication through traditional channels. Symonds BookSurge SJ Decl., ¶ 7.

**BookSurge Does Not Review the Content of Any of Its Customers' Manuscripts:**

16. BookSurge does not review any of its customers' manuscripts for content and offers no fact-checking or similar editing services. Symonds Dep. at 37:15-25 – 38:1-22, 39:22-25 – 40:1-13, 53:15-25 – 54:1-2, 55:18-25 – 56:1-8; Symonds BookSurge SJ Decl., ¶ 4.

17. The sheer volume of new titles that BookSurge handles each year does not permit BookSurge to review the content of any publication. Symonds BookSurge SJ Decl., ¶¶ 4-5.

18. BookSurge loaded more than 350,000 new titles onto its P.O.D. system in 2007. Symonds BookSurge SJ Decl., ¶ 4.

19. If a BookSurge author or customer wishes to purchase technical editing services, these services are outsourced and performed by another, unaffiliated entity. Symonds BookSurge SJ Decl., ¶ 5.

20. The outsourced editing or proofreading services provided are technical only (such as review for grammar), and do not include a review of the content of a submission. Symonds BookSurge SJ Decl., ¶ 5.

21. The transactions between BookSurge and its self-publishing authors such as Ralph Calcagni occur over the internet—self-publishing authors upload their manuscripts on BookSurge's website and pay BookSurge to transform those

manuscripts into bound books or make them available in electronic format. R. Calcagni Dep. I at 117:25 – 118:1-15; Symonds BookSurge SJ Decl., ¶ 6.

22. As a result, BookSurge's review of any manuscript is limited to a technical review of the computer file to ensure that it will be compatible with BookSurge's P.O.D. technology. Symonds Dep. at 38:2-19.

23. During his deposition, Mr. Symonds explained that the only substantive contact that BookSurge employees have with a book is with its title and that the "interior of the book wouldn't be seen." Symonds Dep. at 55:18-25 – 56:1-8.

24. Ralph Calcagni purchased a package from BookSurge known as "Author's Express PDF." Symonds BookSurge SJ Decl., ¶ 6; R. Calcagni Dep. I at 106:10-25 – 107:1-16.

25. Under the "Author's Express PDF" package, the author uploads a completed copy of his or her work in "PDF" file format. Symonds BookSurge SJ Decl., ¶ 6; R. Calcagni Dep. I at 117:25 – 119:1-8.

26. BookSurge then prints the file in a "book" format. Symonds BookSurge SJ Decl., ¶ 6.

27. Ralph Calcagni uploaded a PDF version of the manuscript for *Help Us Get Mia* to BookSurge's website. R. Calcagni Dep. I at 118:8-25 – 119:1-8.

28. BookSurge converted a PDF computer file of the *Help Us Get Mia* manuscript into book format. Symonds BookSurge SJ Decl., ¶ 6.

29. The total cost was $1499, but this included 250 copies of the book—the actual printing cost was $99 (which was waived). Symonds BookSurge SJ Decl., ¶ 6; R. Calcagni Dep. I at 107:2-12.

30. Ralph Calcagni did not contract with BookSurge for any fact checking or editorial services, and he did not expect BookSurge to provide any. R. Calcagni Dep. I at 107:17-25 – 108:1-11; Symonds Dep. at 39:22-25 – 40:1-13.

31. BookSurge and its employees did not read or review the manuscript submitted to them by Ralph Calcagni. Symonds BookSurge SJ Decl., ¶ 8; Francia Decl., ¶ 8.

32. BookSurge and its employees knew nothing about the substance of the *Help Us Get Mia*. Symonds BookSurge SJ Decl., ¶ 8; Francia Decl., ¶¶ 8-9.

33. BookSurge and its employees knew nothing about the individuals involved with the events described in *Help Us Get Mia*. Symonds BookSurge SJ Decl., ¶ 9.

34. BookSurge and its employees had not received any information that would cause them to question the factuality of any of the statements in *Help Us Get Mia*. Symonds BookSurge SJ Decl., ¶¶ 8-9; Segal Opp. Decl., Ex. D (Nov. 2007 Deposition of Shana Sandler ("Sandler Def. Dep. I") at 45:17-25 – 46:1-2).

**"Copyright Page" in *Help Us Get Mia*:**

35. BookSurge provides copyright page samples on its website that do not label BookSurge as a "publisher." Symonds Opp. Decl., ¶ 4 & Ex. A; Symonds BookSurge SJ Decl., ¶ 7 & Ex. A.

36. *Help Us Get Mia*'s copyright page, which was submitted by Ralph Calcagni as part of his PDF upload, referenced BookSurge as the book's "publisher." Symonds Opp. Decl., ¶ 5; Kubetz Aff., Ex. 7 at BS000046; R. Calcagni Dep. I at 117:25 – 119:1-8.

37. BookSurge did not draft or review the copyright page in *Help Us Get Mia*. Symonds BookSurge SJ Decl., ¶¶ 4-5, 7-8 & Ex. A; Symonds Opp. Decl., ¶ 5.

38. BookSurge does not draft the "copyright" pages that appear in any of its customers' self-published books. Symonds BookSurge SJ Decl., ¶ 7 & Ex. A; Symonds Opp. Decl., ¶¶ 3, 4, 6 & Ex. A.

39. Because BookSurge does not review any of the manuscripts that it receives for content, BookSurge did not read, could not edit, and did not alter the copyright page provided in Ralph Calcagni's PDF of *Help Us Get Mia*. Symonds Dep. at 37:15-25 – 38:1-22, 39:22-25 – 40:1-13; Symonds BookSurge SJ Decl., ¶¶ 4-5, 7-8.

**BookSurge Did Not Market *Help Us Get Mia*:**

40. BookSurge does not market its customers' books in the way a traditional publisher would. Symonds Dep. at 51:3-25 – 52:1-15; R. Calcagni Dep. I at 127:3-9.

41. BookSurge "does not go out and attempt to persuade people to purchase books in its inventory by making sales calls." Symonds Dep. at 51:20-25 – 52:1-4.

42. Although some customers may purchase marketing materials from BookSurge, "[t]he marketing process is the responsibility of the author." Symonds Dep. at 52:4-8.

**BookSurge Offers Limited Distribution Options for Its Customers' Manuscripts:**

43. Most BookSurge customers buy copies of their books from BookSurge and self-distribute to local bookstores, distributors, friends, and family. Symonds Dep. at 28:1-10; R. Calcagni Dep. I at 49:16-25 – 50:1-21, 54:4-14.

44. BookSurge makes some of its customers' titles available through limited on-line distribution channels. Symonds Dep. at 28:11-19, 30:24-25 – 32:1-2.

45. BookSurge's customers can list their books on BookSurge's website and Amazon.com's website. Symonds Dep. at 51:11-16; R. Calcagni Dep. I at 53:1-14; Symonds BookSurge SJ Decl., ¶ 6.

46. Although the listing on Amazon.com is facilitated by an agreement between BookSurge and Amazon.com, Amazon.com offers self-publishing authors that do not print with BookSurge several options to sell their books through Amazon.com's website. Symonds Dep. at 32:3-10; Symonds BookSurge SJ Decl., ¶ 6.

47. BookSurge also lists its customers' titles through an on-line electronic feed with distributor Baker & Taylor and retailers Abebooks.com and Alibris.com. Symonds Dep. at 28:10-15, 30:24-25 – 32:1-2.

48. Any listing with Baker & Taylor, Abebooks.com, and Alibris.com is through an electronic feed and any orders based on this electronic feed are sent back to BookSurge. Symonds Dep. at 28:10-19, 30:24-25 – 31:1-20.

49. The bound version of *Help Us Get Mia* was available in September 2006. *See* Symonds BookSurge SJ Decl., Ex. B.

50. The Calcagnis purchased 760 copies. R. Calcagni Dep. I at 48:18-22; Symonds BookSurge SJ Decl., ¶ 10 & Ex. B.

51. The Calcagnis gave the book away to friends and family. R. Calcagni Dep. I at 50:4-8.

52. Ralph Calcagni also sold the book to bookstores in Winthrop, Maine, and surrounding communities and to a Bangor distributor, Magazines, Inc. R. Calcagni Dep. I at 49:16-25 – 50:1-24, 54:4-14.

53. In addition to trying to sell *Help Us Get Mia* to Maine bookstores and distributors, Ralph Calcagni opted to make *Help Us Get Mia* available for sale on Amazon.com's and BookSurge's websites. R. Calcagni Dep. I at 52:2-9, 53:1-14, 127:3-6; Symonds Dep. at 28:20-25 – 29:1-2, 31:25 – 32:1-2, 51:11-16.

54. Approximately 80 copies were purchased on-line through Amazon.com and the BookSurge website. Symonds BookSurge SJ Decl., Ex. B.

55. In total, 840 copies of *Help Us Get Mia* were produced and sold either to Ralph Calcagni or on-line. Symonds BookSurge SJ Decl., ¶ 10 & Ex. B.

56. No other copies of the book were produced or sold. Symonds BookSurge SJ Decl., Ex. B.

57. There is no evidence that *Help Us Get Mia* was listed through Baker & Taylor or Abebooks.com and Alibris.com. Symonds Dep. at 30:24-25 – 32:1-2.

**Terms and Conditions:**

58. There is no evidence that Ralph Calcagni signed the terms and conditions that are Exhibit 3 to the Kubetz Affidavit. BOSMF ¶ 6.

59. The terms and conditions do not define "publish." Kubetz Aff., Ex. 3.

60. The terms and conditions provide for the availability of customer manuscripts by: (1) CD-Rom, (2) DVDs, (3) other magnetic or optical storage media, <u>(4) electronic databases, (5) online distribution, (6) satellite distribution, and (7) ebooks</u>. Kubetz Aff., Ex. 3 at BS000003.

**Differences Between Traditional Publishers and P.O.D. Companies Like BookSurge:**

61. Steve Weinberg, is a professor at the University of Missouri Journalism School and a full-time professional writer. Weinberg Decl., ¶ 2 & Ex. A.

62. Professor Weinberg is familiar with both the traditional publishing and P.O.D. industries based on his personal experience as a professional writer and based on research, studies and articles he has written and conducted about P.O.D. companies like BookSurge. Weinberg Decl., ¶¶ 5-8.

63. Unlike BookSurge, traditional publishers (referred to as "trade" publishers in Weinberg's Declaration) review the content of the manuscripts that are presented to them in order to determine whether they want to publish the manuscripts as books. Weinberg Decl., ¶ 10.

64. Unlike BookSurge, once a traditional publisher accepts a manuscript for publication, the traditional publisher is expected to assign an editor to review, edit, and improve the manuscript in cooperation with the author before the manuscript is printed and published as a book. Weinberg Decl., ¶ 11.

65. Unlike BookSurge, traditional publishers are not paid by their "authors" to print the authors' books. Traditional publishers pay authors for the right to print their manuscripts. Sometimes these payments come in the form of advances, which permit the author to receive payment while the book is in the drafting process. Weinberg Decl., ¶ 12.

66. BookSurge does not market its customers' books in the way that a traditional publisher would. Because traditional publishers pay authors to publish their manuscripts, traditional publishers engage in active marketing campaigns to promote their books and take responsibility for the cost of promotion. For example, at their own expense, traditional publishers will promote their books by sending promotional materials to distributors and retailers. Traditional publishers

also will schedule meetings with distributors and retailers. Traditional publishers will fund advertising to promote books to retail customers. Traditional publishers may sponsor author signing and speaking engagements at major retailers. Weinberg Decl., ¶ 13.

67. Traditional publishers may also fund promotion of their books by circulating copies to magazines and newspapers around the country to encourage reporters to write and publish reviews of their books. Weinberg Decl., ¶ 13.

68. Unlike BookSurge's terms and conditions referenced by Plaintiff (Kubetz Aff., Ex. 3), every contract Professor Weinberg has signed with a traditional publisher has required him to give an exclusive license to the traditional publisher. Weinberg Decl., ¶ 14.

69. According to Professor Weinberg, it would unusual, and he has never seen, a traditional publisher that would accept a non-exclusive license to an author's book when it pays the author advances, funds active marketing campaigns, and funds the distribution of hard copies of the book to distributors and retailers. Weinberg Decl., ¶ 15.

Respectfully submitted,

BOOKSURGE, LLC

By its attorneys,

/s/ Harold J. Friedman
Harold J. Friedman
Friedman, Gaythwaite, Wolf & Leavitt
P.O. Box 4726
6 City Center
Portland, ME 04112

Stephen A. Smith (Pro Hac Vice)
Matthew J. Segal (Pro Hac Vice)
Kari Vander Stoep (Pro Hac Vice)
Kirkpatrick & Lockhart Preston
 Gates Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158

April 2, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE AT BANGOR

| | |
|---|---|
| SHANA SANDLER, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> MIA CALCAGNI, ) <br> RALPH CALCAGNI, ) <br> MAUREEN CALCAGNI, ) <br> PETER MARS, ) <br> and ) <br> BOOKSURGE, LLC, ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:07-CV-00029-GZS |

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_____
Dawn M. Taylor, Legal Assistant