UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **SHANA SANDLER**, | ) |
|       *Plaintiff* | ) |
| v. | ) Case No. 1:07-cv-00029 |
| **MIA CALCAGNI** *et al*, | ) |
|       *Defendants* | ) |

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT
BOOKSURGE'S MEMORANDUM OPPOSING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Shana Sandler hereby submits her reply to Defendant Booksurge's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment (Docket No. 110). In accordance with the strictures of Local Rule 7, this reply memorandum is confined to addressing new matters raised in the opposing memorandum. *See* Local Rule 7(c).

### I.    BOOKSURGE WAS NEGLIGENT IN PUBLISHING *HELP US GET MIA*

Contrary to Booksurge's arguments, Plaintiff has never sought to assert liability without fault. Plaintiff's Motion for Partial Summary Judgment sought to establish a singular issue: Booksurge's status as the publisher of *Help Us Get Mia* (the "Book"). Plaintiff's motion left for subsequent determination issues of fault, defamatory meaning, defenses and privileges and damages. However, in responding to Booksurge's Motion for Summary Judgment on All Claims of Shana Sander (Docket No. 96), Plaintiff has carefully laid out the threshold constitutional analysis and established that Plaintiff's claims for defamation against Booksurge are subject only

to proof of negligence as established by Maine law. *Pl. Mem. in Opp. to Defs. Mot. for Sum. Judgmt., pp. 7-15*. As more fully set forth in Plaintiff's Memorandum in Opposition to Booksurge's Motion for Summary Judgment (Docket No. 129), and her Statement of Additional Material Facts (Docket No. 130), Plaintiff provides evidence from her expert, publishing executive H. Allen Fernald, that Booksurge's behavior in publishing the Book fell below the standard in Maine of what a reasonably prudent person would do acting in similar circumstances. *Pl. Mem. in Opp. to Defs. Mot. for Sum. Judgmt., pp. 20-22*. This case has never been about strict liability for publishing the Book; Booksurge has interjected that issue in hopes of avoiding liability for its negligence in publishing a manuscript with the level of defamatory falsehoods and invasions of privacy like those contained in the Book.

Booksurge clings to its argument that it was but a "contract printer" of the Book and has lobbed more facts into the record to attempt to bolster its weak position on this point. These facts, however, only bolster Booksurge's negligence: the company accepts all manuscripts sent to it for publication if the author is prepared to pay for that service. Booksurge publishes books without first reviewing their content, while other prudent publishers would first review a proposed manuscript before deciding to publish it.

Booksurge's status is highlighted, and made crystal clear on the copyright page in the Book. It identifies itself as "publisher." Booksurge claims that Ralph Calcagni deviated from the sample copyright page it provided to create one listing it as the publisher – a status it would now prefer to avoid. Booksurge controlled whether, and how, to identify itself. If it did not intend to tell the world that it was the publisher of the Book, it could have noted its status to be something other than publisher.

Booksurge relies on three disparate cases to support its argument that it is not the publisher of the Book, but a "contract printer." The lynchpin of Booksurge's argument is *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555 (Wis. 1980), a decision largely ignored by almost every court outside Wisconsin for the proposition for which Booksurge offers it. The relevance of *Maynard* is limited to Wisconsin because it articulates the test for the negligent publication of defamatory statements under Wisconsin law. 98 Wis.2d 555, 565. There is no need in this case to look to the law of the State of Wisconsin: the Maine Law Court has already defined the standard under Maine law to be what a reasonably prudent person would do acting under like circumstances. *See Penobscot Indian Nation v. Key Bank,* 112 F.3d 538, 560 (1st Cir. 1997). However the Supreme Court of Wisconsin has defined that standard for claims arising under Wisconsin law, it is irrelevant for the purposes of this case.

The Defendant also relies on *Misut v. Mooney*, 124 Misc. 2d 95 (N.Y. Sup. Ct.), an opinion from a New York State trial court that is largely dicta. Its reliance on *Cubby, Inc. v. Compuserve, Inc.,* 776 F. Supp. 135 (S.D.N.Y. 1991), is equally misplaced because the Communications Decency Act of 1996, 47 U.S.C. § 230 (2006), has rendered the case largely superfluous.

The instant case involves Booksurge's negligence in publishing the Book. As more fully set forth in Plaintiff's Memorandum in Opposition to Booksurge's Motion for Summary Judgment on All Claims of Shana Sandler, Plaintiff's claims for defamation are subject only to proof of negligence as defined by Maine law.

## II. BOOKSURGE IS JUDICIALLY ESTOPPED FROM CHANGING ITS POSITION ON THE "AUTHOR PUBLISHING AGREEMENT"

Booksurge cannot change its position and argue that the "Author Publishing Agreement" does not govern its relationship with Ralph Calcagni for the publication of the Book when it has maintained the opposite position throughout this case.

Judicial estoppel prevents a party "from prevailing in one phase of a case on an argument and then relying on a contrary argument to prevail in another phase." *State of New Hampshire v. State of Maine*, 532 U.S. 742, 750 (2001) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (*quoting Davis v. Wakelee*, 156 U.S. 680 (1895)).

Booksurge has represented to this Court on numerous occasions that the Author Publishing Agreement governs the relationship between Ralph Calcagni and Booksurge for the Book's publication. In Booksurge's Crossclaim against Defendants Ralph Calcagni and Maureen Calcagni (Docket No. 61), made pursuant to the provisions of Fed. R. Civ. P. 11, Booksurge affirmatively represented to the Court and the parties that the Author Publishing Agreement, which it attached as Exhibit A to its crossclaim, governed the terms and conditions between Ralph Calcagni and Booksurge. *Cross-Claim Against Defendants Ralph Calcagni and Maureen Calcagni by Booksurge, LLC*, ¶¶ 3-4; Ex. A.

In a telephone conference with the Court on March 11, 2008, held after Booksurge repeatedly failed to produce a signed copy of the Author Publishing Agreement, Booksurge again represented that this document governed the terms and conditions between Ralph Calcagni and Booksurge for the publication of the Book. Booksurge's counsel then represented to the

Court that there is no signed copy of the agreement available and the unsigned agreement governs the relationship between Booksurge and Ralph Calcagni for the publication of the Book. *Report of Telephone Conference and Order*, dated March 12, 2008 (Docket No. 95).

Beyond these bald representations to the Court, Booksurge has relied on the existence of the agreement in a number of places. In its Statement of Additional Material Facts (Docket No. 112), for example, Booksurge relies on the agreement to establish that it acquires only a non-exclusive license to publish its authors' books and the formats in which Booksurge may make the Book available. *Booksurge, LLC's Additional Statement of Material Facts*, ¶¶ 14, 66.

Without explanation, Booksurge now attempts to reverse its position and argue that the "Author Publishing Agreement" does not govern the relationship between Ralph Calcagni and Booksurge for the production of the Book because the agreement is not signed. *Opposing Memorandum, p. 9; BSAMF ¶ 58*. It is hard to understand how Booksurge can simultaneously and in good faith justify, within the scope of Fed. R. Civ. P. 11, such inconsistent positions.

Booksurge is judicially estopped from adopting the position that the Author Publishing Agreement (the only agreement it has produced and represented exists between it and Ralph Calcagni) does not govern the relationship between itself and the Book's purported author. It has relied on its earlier position in multiple instances to its advantage, and it would unfairly prejudice Plaintiff if Booksurge were now permitted to reverse itself without justification especially when Booksurge made its representation about the agreement in response to a discovery dispute conference relating to the agreement.

### III. BOOKSURGE IS NOT AN "INTERACTIVE COMPUTER SERVICE" WITHIN THE MEANING OF THE COMMUNICATIONS DECENCY ACT.

In a last-ditch effort to avoid liability for its role in publishing the Book, Booksurge has claimed that the Communications Decency Act of 1996, 47 U.S.C. § 230 (2006) (the "CDA"),

shields it from liability because the method in which its authors transmit their manuscripts to it qualifies it as an "interactive computer service" within the meaning of the CDA.

Contrary to Booksurge's argument, Booksurge is not immune from liability under Section 230 of the CDA. Section 230 provides that "[n]o provider or user of an *interactive computer service* shall be treated as the publisher or speaker or any information provided by another information content provider." *Id.* § 230(c)(1) (emphasis added). The CDA defines an "interactive computer service" to mean "any information service, system or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . ." *Id.* § 230(f)(2).

Booksurge is not an interactive computer service. It does not provide multiple users *access* to a computer server that provides access to the internet. Booksurge is a book manufacturer, publisher and distributor in Charleston, South Carolina that utilizes advanced technology to produce books in small-runs, listing those titles for sale on Amazon.com's website. *PSMF ¶¶ 3, 12; BASMF ¶¶ 4-5*. Depending on the publishing arrangement, authors transmit manuscripts to Booksurge by "[u]pload[ing] a completed copy of his or her work in 'PDF' file format." *BSAMF ¶ 25*.

However, mere transmission of the manuscript via the internet does not convert Booksurge into an interactive computer service within the meaning of the CDA.[1] First, there is no evidence that Booksurge operates a "server." The only evidence is that their authors "upload" their manuscripts in PDF format. *BSAMF ¶ 25*. Whatever upload may mean, the statement does

---

[1] Carried to its logical result, Booksurge's argument would mean that any publisher seeking to avoid liability for defamation claims could invoke the protective cloak of the CDA merely by instructing its authors to email or "upload" final versions of their manuscript prior to publication and, by transmitting them across the internet, the CDA would prevent liability. This argument and the result it seeks are contrary to the express provisions of the CDA.

6

not encompass computer servers. Beyond the mere conduit for the transmission of manuscripts, Booksurge has failed to provide the Court with record evidence that it provides or enables *computer access* to *a computer server* within the meaning of the CDA. Booksurge is not an access provider. Even if it maintains a server, the threshold requirement of the CDA is that it provide *access* to that server – such as an internet service provider. The vast majority of cases involving Section 230 immunity have involved internet service providers. *See, e.g., Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007); *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.,* ___ F.3d ___, No. 07-1101, Slip Op. (7th Cir. 2008); *Carafano v. Metrosplash.Com, Inc.,* 339 F.3d 1119 (9th Cir. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997). Unlike these entities, Booksurge does not facilitate access to the internet. Booksurge's involvement with the internet is limited to using it as a medium for authors to transmit their manuscripts to Booksurge. *BSAMF ¶ 25*.

Accordingly, Booksurge is not immune from liability under the CDA for its role in publishing the Book because it fails to meet the requirements of an interactive computer service as defined by that statute.

Dated at Bangor, Maine, this 24th day of April, 2008.

        PLAINTIFF, Shana Sandler,


        By: ___*/s/ Bernard J. Kubetz*___
          Bernard J. Kubetz, Esq.
          Michael R. Clisham, Esq.
          EATON PEABODY
          P. O. Box 1210
          80 Exchange Street
          Bangor, Maine 04402-1210
          (207) 947-0111
          bkubetz@eatonpeabody.com

# CERTIFICATE OF SERVICE

I, Bernard J. Kubetz, hereby certify that on April 24, 2008, I electronically filed the foregoing Plaintiff's Reply Memorandum to Defendant Booksurge's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to the following:

Bruce Mallonee, Esq.
Rudman & Winchell, LLC
P. O. Box 1401
Bangor, Maine 04402-1401
bmallonee@rudman-winchell.com

Steven P. Wright, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950
steven.wright@klgates.com

Matthew J. Segal, Esq.
Stephen A. Smith, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
matthew.segal@klgates.com

J. William Druary, Jr., Esq.
Marden, Dubord, Bernier & Stevens
P. O. Box 708
Waterville, Maine 04903-0708
bdruary@mardendubord.com

Harold J. Friedman, Esq.
Friedman, Gaythwaite Wolf & Leavitt
P. O. Box 4726
Portland, Maine 04112-4726
hfriedman@FGWL-law.com

                 */s/ Bernard J. Kubetz*
                 Bernard J. Kubetz