UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **SHANA SANDLER**, | ) <br> ) <br> ) |
| *Plaintiff* | ) <br> ) |
| v. | ) <br> ) Case No. 1:07-cv-00029 <br> ) |
| **MIA CALCAGNI** *et al*, | ) <br> ) <br> ) |
| *Defendants* | ) <br> ) |

### PLAINTIFF'S REPLY TO DEFENDANT BOOKSURGE'S
### ADDITIONAL STATEMENT OF MATERIAL FACTS

Plaintiff Shana Sandler submits her reply to Defendant Booksurge's additional statement of material facts of April 2, 2007 (Docket No. 111), pursuant to Fed. R. Civ. P. 56 and Local Rule 56(d) as follows.

1.    Denied. Booksurge is a book manufacturer, publisher and distributor located in Charleston, South Carolina. Affidavit of Bernard J. Kubetz in Support of Plaintiff's Motion for Partial Summary Judgment, dated March 5, 2008 ("Kubetz Aff."), Ex. 1 at 10:23-25; 11:20-22; 15:14-20; 26:1-13; 28:1-15; 28:24-25; 30:24-25; 31:1-20; Ex. 7, *"Help Us Get Mia"* at BS000046; Kubetz Aff., Ex. 3 at BS000003.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

1

6. Denied. *See* Declaration of William Druary, dated April 3, 2008, Ex. A at 20:8-16 ("Q: And how much did you charge [the Calcagnis]? A: $3,000. Q: And what was involved in that charge? What did they get for $3,000? A: I would take the material they gave me, transcribe it onto the computer, put it in the order that seemed to make the most sense, making sure that the grammar was correct, and then return it to them for their approval. And that was it."), 26:4-6 ("Q: You – it's my understanding that it's your position that you were not the author of the book; is that correct? A: That is correct.").

7. Denied. Ralph Calcagni was able to have *Help Us Get Mia* published through an "Author Publishing Agreement" with Booksurge, LLC. The assertion that Ralph Calcagni "self-published" the book through Booksurge is contrary to express terms and conditions governing the relationship between the parties. Kubetz Aff., Ex. 7, *"Help Us Get Mia"* at BS00045; Kubetz Aff., Ex. 1 at 47:6-9, 48:6-14; Kubetz Aff., Ex. 4 at BS000001 – BS000007.

8. Qualified. Ralph Calcagni testified that, after receiving unfavorable responses from well-known publishing companies like Random House, he began to investigate "self-publishing" companies that would print the manuscript in return for a fee and that he would be responsible for distributing it. Declaration of Matthew J. Segal in Support of Booksurge, LLC's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment, dated April 2, 2008 ("Segal Dec. 2"), Ex. A at 42:14 - 44:9. Mr. Calcagni did not testify that he sought out any "print on demand" or "P.O.D." publisher. Segal Dec. 2, Ex. A at 101:22 – 102:2.

9. Admitted.

10. Denied. Booksurge actively solicits new titles through its sales department and personnel. Kubetz Aff., Ex. 1 at 16:25, 17:1-4; 20:17-23; 34:21 - 35:21.

11. Qualified. Booksurge sales people follow up regarding Booksurge's publishing services. Kubetz Aff., Ex. A at 34:21 – 35:21.

12. Admitted.

13. Qualified. Plaintiff admits the statement to the extent it refers to Booksurge's relationship with its authors, but otherwise denies the statement to the extent it refers to "traditional" publishers. This statement is based on Mr. Weinberg's individual experience with trade publishers. While Mr. Weinberg has researched print-on-demand publishing and may be familiar with the practices and procedures across a variety of print-on-demand publishers, his knowledge of trade publishers is limited to his individual experience, and there is no indication that this experience is representative of the broad spectrum of entities engaged in what Mr. Weinberg calls "trade publishing." Declaration of Steven Weinberg in Support of Booksurge, LLC's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment, dated April 2, 2008 ("Weinberg Dec."), ¶ 5.

14. Admitted.

15. Admitted.

16. Admitted.

17. Qualified. Booksurge concedes that it is possible to fulfill its duties as a publisher to review submission and investigate further when a manuscript raises a red flag, which would "limit the content we could accept or produce." Declaration of David Symonds in Support of Booksurge's Motion for Summary Judgment ("Symonds Dec. 1"), ¶¶ 4-5.

18. Qualified. The record citation provided by Defendant only supports that Booksurge "made available" more than 360,000 titles in 2007 alone. The record citation does not establish that such titles were loaded on to any "P.O.D." system.

19. Admitted.

20. Admitted.

21. Admitted.

22. Qualified. Unless a manuscript is not in a physical format that enables Booksurge to print it, Booksurge is willing to print, publish and distribute any manuscripts submitted to it for publication. Kubetz Aff., Ex. 1 at 38:2-19.

23. Qualified. The record citation provided by Booksurge establishes the circumstances under which the title and content of a manuscript would be likely to elicit an opinion from Booksurge's counsel on whether Booksurge should publish the material. The record citation provided by Booksurge does not describe, as a general rule, the substantive contact Booksurge "employees," without further definition, have with a book. Segal Dec. 2, Ex. B at 55:18 – 56:8.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Denied. Booksurge received a copy of *Help Us Get Mia* from Ralph Calcagni, and the statements that reflect one of the book's characters to have masturbated in the girls' bathroom at school would have put Booksurge on notice of the need to question the accuracy of the statement and the book as a whole. Declaration of Bernard J. Kubetz in Support of Plaintiff's Memorandum in Opposition to Defendant Booksurge and Defendant Mars' Motions for Summary Judgment, dated April 14, 2008 ("Kubetz Dec."), Ex. 2; Ex. 3 at 54:20-25; 55:23 - 56:20; 57:24 – 59:5; 87:20 – 88:25; Segal Dec. 2, Ex. A at 118:8 – 119:8.

35. Admitted.

36. Admitted.

37. Admitted.

38. Qualified. Booksurge provides samples as guides for the "copyright" pages in the books it publishes and is willing to accept as a "copyright" page whatever is submitted by its authors. Kubetz Dec., Ex. 1 at 37:15 - 38:22, 39:22-25, 40:1-13; Segal Dec. 2, Ex. B at 53:15 – 54:2, 55:18 – 56:8; Symonds Dec. 1, ¶¶ 4, 7; Ex. A; Declaration of David Symonds in Support of Booksurge's Memorandum Opposing Plaintiff's Motion for Partial Summary Judgment ("Symonds Dec. 2"), ¶ 4; Ex. A.

39. Denied. Had Booksurge undertaken the reasonable duties incumbent upon a prudent publisher, it would have noticed that one of its authors was according its greater status in the publication than it was prepared to accept and removed or changed the offending material. Kubetz Dec., Ex. 2; Ex. 3 at 54:20-25, 55:23 – 56:20.

40. Denied. The record citation establishes only how Booksurge distributes *its* books. The citation contains no material on how a "traditional publisher" markets and distributes its

books and any comparison between Booksurge's activities and any undefined "traditional publisher" is unsupported by the record citation. Segal Dec. 2, Ex. B at 51:3 – 52:15.

41. Admitted.

42. Admitted.

43. Qualified. The record citation establishes the general practice of Booksurge's authors. It does not define whether the practice applies to "most" authors or any stated statistical amount of Booksurge's authors. Kubetz Aff., Ex. 1 at 28:1-10.

44. Qualified. The record citation provided establishes that authors can independently distribute their work and whether they want the work sold through "other distribution channels." It is not clear that Booksurge is involved in such efforts. It is clear, however, that Booksurge provides a listing of the book to Amazon.com. Kubetz Aff., Ex. 1 at 28:11-19; Segal Dec. 2, Ex. B at 30:24 – 32:2.

45. Qualified. The record citation provided by Booksurge establishes only that Booksurge offers its authors the option to list their books for sale on Amazon.com. The record citation does not establish that Booksurge's authors can list their books for sale on Booksurge's website.

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted.

52. Admitted.

53. Denied. The material cited does not support this proposition. Mr. Calcagni stated that the book *Help Us Get Mia* was available for purchase through Amazon.com and that he was aware of that; Mr. Calcagni, in the material cited, did not state that the book was available through Amazon.com as a result of any effort or choice of his own. He merely confirmed his awareness of this fact. In addition, the material cited contains no reference for the proposition that Mr. Calcagni opted to have *Help Us Get Mia* available for sale on Booksurge's website. Declaration of Matthew J. Segal in Support of Booksurge, LLC's Motion for Summary Judgment, dated March 17, 2008 ("Segal Dec. 1"), Ex. I at 52:2-9.

54. Admitted.

55. Admitted.

56. Admitted.

57. Qualified. Booksurge admitted that it transmitted the listing information about *Help Us Get Mia* to book distributor Baker & Taylor and book retailer Abe & Aliris. David Symonds, general manager of Booksurge, testified at his deposition only that he had no personal knowledge that Baker & Taylor listed the book for sale, not that it was not listed for sale through Baker & Taylor or the other sales outlets. Kubetz Dec., Ex. 1 at 30:24 – 31:25.

58. Denied. Booksurge has represented to this Court on two previous occasions that the Author Publishing Agreement it produced governed the relationship between Ralph Calcagni and Booksurge for the production of *Help Us Get Mia*. In the telephonic discovery conference held after Plaintiff repeatedly requested signed copies of the Author Publishing Agreement, Defendant Booksurge's counsel, Matthew Segal, represented to Judge Kravchuk that there is no signed agreement available and the unsigned form of the agreement governs the relationship between Booksurge and Ralph Calcagni for the production of *Help Us Get Mia*. Report of

Telephone Conference and Order, dated March 12, 2008 (Docket No. 95). In Booksurge's Cross-Claim against Defendants Ralph Calcagni and Maureen Calcagni (Docket No. 61), made pursuant to the provisions of Fed. R. Civ. P. 11, Booksurge affirmatively represented that the Author Publishing Agreement governed the terms and conditions between Ralph Calcagni and Booksurge. Cross-Claim Against Defendants Ralph Calcagni and Maureen Calcagni by Booksurge, LLC, ¶¶ 3 – 4; Ex. A.

59. Qualified. The document speaks for itself. Kubetz Aff., Ex. 3.

60. Qualified. The document speaks for itself. Kubetz Aff., Ex. 3.

61. Admitted.

62. Admitted.

63. Qualified. This statement is based on Mr. Weinberg's individual experience with trade publishers. While Mr. Weinberg has researched print-on-demand publishing and may be familiar with the practices and procedures across a variety of print-on-demand publishers, his knowledge of trade publishers is limited to his individual experience and there is no indication that this experience is representative of the broad spectrum of entities engaged in what Mr. Weinberg calls "trade publishing." Weinberg Dec., ¶ 5.

64. Qualified. See response to No. 63.

65. Qualified. See response to No. 63.

66. Qualified. See response to No. 63.

67. Qualified. See response to No. 63.

68. Admitted.

69. Qualified. See response to No. 63.

Dated at Bangor, Maine, this 24th day of April, 2008.

        PLAINTIFF, Shana Sandler,

By   */s/ Bernard J. Kubetz*
      Bernard J. Kubetz, Esq.
      Michael R. Clisham, Esq.
      EATON PEABODY
      P. O. Box 1210
      80 Exchange Street
      Bangor, Maine 04402-1210
      (207) 947-0111
      bkubetz@eatonpeabody.com
      mclisham@eatonpeabody.com

**CERTIFICATE OF SERVICE**

I, Bernard J. Kubetz, hereby certify that on April 24, 2008 I electronically filed the foregoing Plaintiff's Reply to Defendant Booksurge's Additional Statement of Material Facts with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to the following:

Bruce Mallonee, Esq.
Rudman & Winchell, LLC
P. O. Box 1401
Bangor, Maine 04402-1401
bmallonee@rudman-winchell.com

Steven P. Wright, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950
steven.wright@klgates.com

Matthew J. Segal, Esq.
Stephen A. Smith, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
matthew.segal@klgates.com

J. William Druary, Jr., Esq.
Marden, Dubord, Bernier & Stevens
P. O. Box 708
Waterville, Maine 04903-0708
bdruary@mardendubord.com

Harold J. Friedman, Esq.
Friedman, Gaythwaite Wolf & Leavitt
P. O. Box 4726
Portland, Maine 04112-4726
hfriedman@FGWL-law.com

*/s/ Bernard J. Kubetz*_____
Bernard J. Kubetz